IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,160

In the Matter of FORREST A. LOWRY,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 2, 2022. Ninety-day suspension, stayed pending successful completion of the agreed three-year probation plan.

*W. Thomas Stratton Jr.*, of Disciplinary Administrator's office, argued the cause, and *Stanton A. Hazlett*, former Disciplinary Administrator, and *Gayle Larkin,* Disciplinary Administrator, were with him on the formal complaints for the petitioner.

*John J. Ambrosio,* of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause for respondent, and *Forrest A. Lowry*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against the respondent, Forrest A. Lowry, of Ottawa, an attorney admitted to the practice of law in Kansas in 1988.

The following summarizes the history of this case before the court:

The Office of the Disciplinary Administrator filed a formal complaint in disciplinary case number DA13,344 against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer to the complaint.

1

The hearing panel then conducted a hearing on the formal complaint by Zoom, where the respondent appeared along with counsel. Following the hearing, the hearing panel issued an order stating that the panel would keep the record open, and if the respondent timely filed and implemented a plan of probation, the hearing panel would schedule a second hearing to receive evidence on the probation plan and its implementation. Respondent did file and implement such plan, and further hearing on the formal complaint was scheduled.

Before the hearing could take place, respondent self-reported an ineffective assistance of counsel determination to the Office of the Disciplinary Administrator. The self-report was docketed and investigated by the Disciplinary Administrator as disciplinary case number DA13,693. The formal hearing in DA13,344 was continued until a probable cause determination could be made in DA13,693.

Months later, the Office of the Disciplinary Administrator filed a formal complaint in DA13,693. The respondent filed an answer to this new complaint. That same day, the respondent filed a proposed plan of probation in DA13,693, which in material part, was identical to the amended probation plan filed in DA13,344. Both cases were scheduled for combined disposition. A formal hearing, during which respondent appeared in person and by counsel, was held by Zoom on all remaining matters in both cases.

The hearing panel determined the respondent violated KRPC 1.3 (2022 Kan. S. Ct. R. at 331) (diligence); KRPC 1.4 (2022 Kan. S. Ct. R. at 332) (communication); KRPC 3.2 (2022 Kan. S. Ct. R. at 390) (expediting litigation); and KRPC 8.4 (2022 Kan. S. Ct. R. at 434) (professional misconduct).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

2

"*Findings of Fact*

"33.     The hearing panel finds the following facts, by clear and convincing evidence:

"34.     The respondent is engaged in the private practice of law as a solo practitioner. His practice consists of criminal defense in state and federal courts. He has served as panel counsel for the Board of Indigents' Defense Services, which provides indigent felony defense services in Kansas state courts.

"DA13,344

"*Representation of R.F.*

"35.     In May 2008, R.F. was convicted of first-degree murder, rape, aggravated kidnapping, aggravated arson, aggravated criminal sodomy, aggravated battery, and criminal threat. The court sentenced R.F. to 81 years in prison, including a hard 50 sentence for the murder conviction.

"36.     R.F. took a direct appeal from his convictions to the Kansas Supreme Court. The Supreme Court affirmed the convictions in 2010.

"37.     On November 3, 2010, R.F. sought relief pursuant to K.S.A. 60-1507 in Allen County District Court case number 2010-CV-90.

"38.     The court considered and denied R.F.'s K.S.A. 60-1507 motion on March 22, 2013. Thereafter there was a delay during which notice of appeal was filed, the Appellate Defender's Office was allowed to withdraw, and the appeal was withdrawn. Then, the court appointed other counsel to perfect the appeal.

"39.     Other counsel failed to timely perfect the appeal. On May 16, 2018, other counsel filed a notice of appeal and a motion to withdraw from the representation. The court granted other counsel's motion to withdraw.

3

"40.     On June 13, 2018, Dina L. Morrison, chief clerk of the Allen County District Court, called the respondent and informed him that he had been selected to be appointed to represent R.F. in the appeal from the denial of the K.S.A. 60-1507 motion.

"41.     The respondent accepted the appointment to represent R.F.

"42.     On June 13, 2018, Ms. Morrison sent the respondent an email that stated:

'I have submitted the Order Appointing to Judge Rogers and it should be done later today and you will have access to the case. I added you as a conflict attorney in the underlying criminal case since you aren't officially appointed on it. I hope that allows you access in Eflex. The case number is 2006CR110.

'Judge Rogers asked me to thank you for taking the case.'

"43.     That same day, the Allen County District Court entered an order appointing the respondent as attorney of record in 2010-CV-90.

"44.     The respondent took no immediate steps to timely perfect R.F.'s appeal.

"45.     On February 26, 2019, R.F. wrote to the respondent asking him for a status update. The respondent did not respond to R.F.'s letter.

"46.     On May 24, 2019, R.F. again wrote to the respondent asking him for a status update. The respondent did not respond to R.F.'s letter.

"47.     On July 17, 2019, R.F. sent a letter of complaint to the disciplinary administrator's office about the respondent.

"48.     After receiving a copy of R.F.'s complaint, the respondent sent a response to the disciplinary administrator's office on September 16, 2019. In his response, the respondent stated that he would perfect the appeal that same day or the following day.

4

"49.    The respondent stated in his response to R.F.'s complaint and testified during the formal hearing that he confused R.F. with another client of the respondent's with a similar name and located at the same prison.

"50.    The respondent attempted to docket the appeal on September 18, 2019, and again on October 3, 2019, but both attempts were rejected by the court because the filings did not include required certified copies of documents. The respondent finally perfected the appeal on October 15, 2019.

"51.    The respondent testified that during this time a firm he was part of for 22 years disbanded and he had recently begun practicing on his own with no support staff except for help with billing. The respondent has dealt with sleep apnea, depression, and occupational paralysis for years, which he testified impacted his ability to complete work on clients' cases.

"52.    The respondent stipulated that his conduct in representing R.F. in this case violated KRPC 1.3 (diligence), 1.4 (communication), and 3.2 (expediting litigation).

"DA13,693

"*Representation of A.W.*

"53.    A.W. was charged with two counts of rape in Douglas County District Court case number 2017-CR-1012. The respondent represented A.W. in 2017-CR-1012, including a four-day jury trial that began on January 7, 2019. At the end of trial, the jury hung on the first count and convicted A.W. of the second count of rape.

"54.    After appeal, a Van Cleave hearing was held in A.W.'s case on November 2 and 3, 2020. Douglas County District Court Judge Sally D. Pokorny found that the respondent provided ineffective assistance of counsel to A.W.

5

"55.     On March 16, 2021, Judge Pokorny ruled, in material part, as follows:

'The discovery produced by the State included approximately 2000 pages of text messages and hundreds of photographs that were collected from [the alleged victim's] phone, and this discovery was in Mr. Lowry's possession. However, Mr. Lowry testified he did not review the evidence.'

'The failure of Mr. Lowry to review the text messages denied him the ability to strongly attack the credibility of [the State's expert] Dr. Spiridigliozzi and the validity of his report.'

'I also find it was ineffective assistance of counsel for Mr. Lowry to fail to request the unredacted report from Dr. Spiridigliozzi. Mr. Lowry received a redacted report of the doctor's report. He never requested an unredacted report. He admits he was entitled to the full report and has no explanation for why he did not ask for an unredacted report.'

'. . . According to the report written by Dr. Spiridigliozzi, he knew the victim had received treatment for mental health issues before she met the defendant. He knew she had previously been prescribed Xanax and Zoloft and he received a report from the victim's mother that the victim was previously prescribed Prozac. But when he testified at the jury trial, he failed to let the jury know that, and Lowry, not having the text messages or Dr. Spiridigliozzi's full report, was unable to cross-examine him about this issue.'

'Dr. Spiridigliozzi was operating as the State's hired lie detector and he implied the victim was credible because he had confirmed everything she told him was accurate. At a pretrial hearing, the parameters of Dr. Spiridigliozzi went far beyond those parameters and no objection was made. Mr. Lowry was ineffective for failing to object.'

'However, the Court's confidence in the jury's verdict is undermined by Mr. Lowry's failure to review text messages, as those messages went directly to the credibility of the victim's self-reports to Dr. Spiridigliozzi, upon which his

6

diagnosis was based, and went directly to the credibility of Dr. Spiridigliozzi's testimony to the jury that he had confirmed everything the victim reported to him as being accurate.'

'In my 43 years of experience as a lawyer and a Judge trying and presiding over criminal cases, it is my firm belief that if the jury knew of the information contained in the 2000 text messages taken from the victim's phone, there is a substantial likelihood the outcome of this case would have been different. I find Mr. Lowry was ineffective in not reviewing the discovery in his possession and in not demanding a copy of the unredacted report from [the State's expert]. I am ordering a new trial in this case. I will prepare an order to transport the defendant back to Douglas County for a bond hearing and will also have, at the same time, a case management hearing and a setting for a new trial.'

"56.     The respondent testified that he agreed with Judge Pokorny's decision that he provided ineffective assistance. The respondent said that at the time of A.W.'s trial, he had well over 100 case files, represented clients in high level felony matters in 10 counties and three or four federal courts, and was preparing for a murder trial in Coffey County and another rape trial just two weeks later. He acknowledged that he had taken on too much work during that time.

"57.     The respondent stipulated that he violated KRPC 1.3 (diligence) by failing to review the text messages of the alleged victim that he had received in discovery, which would have allowed the respondent to cross examine the State's expert regarding the alleged victim's credibility more effectively. The respondent also stipulated that he violated KRPC 1.3 by failing to object to the State's expert testimony implying that the alleged victim's statements to the expert were credible because the expert confirmed the statements were accurate. Further, the respondent stipulated that he violated KRPC 1.3 by failing to request an unredacted report of the State's expert, to which he was entitled, and which would have enabled him to more effectively cross examine the State's expert at trial. Finally, the respondent stipulated that he violated KRPC 1.3 by failing to bring to the jury's attention certain Facebook pictures that portrayed the alleged victim in a less sympathetic way than she had portrayed herself to the State's expert witness.

7

"58.    The respondent further stipulated that the above conduct also violated KRPC 8.4(d) (misconduct prejudicial to the administration of justice).

"59.    The respondent further stipulated that the above conduct also violated KRPC 8.4(g) (misconduct that adversely reflects on the lawyer's fitness to practice law).

"*Conclusions of Law*

"60.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 3.2 (expediting litigation), and KRPC 8.4(d) and (g) (professional misconduct), as detailed below.

"KRPC 1.3

"61.    Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The respondent failed to diligently and promptly represent R.F. and A.W.

"62.    In R.F.'s case, the respondent failed to timely file and perfect R.F.'s appeal of the denial of his K.S.A. 60-1507 motion. The respondent accepted appointment to represent R.F. on June 13, 2018, and was appointed that same day. However, the respondent did not attempt to docket R.F.'s appeal until September 18, 2019. The respondent's first two attempts to docket the appeal were rejected for failure to include required certified copies of court documents. The respondent finally perfected the appeal on October 15, 2019. This resulted in a delay of over 16 months for R.F.'s appeal to be perfected.

"63.    In A.W.'s case, the respondent: (1) failed to request an unredacted copy of the State's expert's report, to which the respondent was entitled, and would have enabled him to more effectively cross examine the State's expert; (2) failed to review the alleged victim's text messages that the respondent had received in discovery, which, had he reviewed them, would have enabled him to cross examine the State's expert during

8

trial about the messages, potentially undermining the credibility of the alleged victim; (3) failed to object to the State's expert's testimony implying that the alleged victim's statements to the expert were credible because the expert confirmed the statements were accurate; and (4) failing to bring to the jury's attention certain Facebook pictures that portrayed the alleged victim in a less sympathetic way than she had portrayed herself to the State's expert.

"64.    The respondent's lack of diligence caused significant delay in R.F.'s appeal and resulted in an ineffective assistance of counsel determination and finding of substantial likelihood that the jury's ruling would have been different but for the respondent's ineffective assistance in A.W.'s case.

"65.    The respondent stipulated that he violated KRPC 1.3 in R.F. and A.W.'s cases.

"66.    Because the respondent failed to act with reasonable diligence and promptness in representing his clients, R.F. and A.W., the hearing panel concludes that there is clear and convincing evidence the respondent violated KRPC 1.3.

"KRPC 1.4

"67.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

"68.    The respondent violated KRPC 1.4(a) when he failed to respond to R.F.'s February 26, 2019, and May 24, 2019, letters requesting information about the status of his appeal.

"69.    The respondent stipulated that he violated KRPC 1.4 in R.F.'s case.

"70.    Accordingly, the hearing panel concludes that there is clear and convincing evidence the respondent violated KRPC 1.4(a).

9

## "KRPC 3.2

"71.     'A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of his client.' KRPC 3.2.

"72.     The respondent caused unnecessary delay in R.F.'s case by failing to perfect the appeal of the denial of R.F.'s K.S.A. 60-1507 motion for more than 16 months.

"73.     The respondent stipulated that he violated KRPC 3.2 in R.F.'s case.

"74.     Accordingly, the hearing panel concludes that there is clear and convincing evidence the respondent violated KRPC 3.2.

## "KRPC 8.4(d)

"75.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d).

"76.     The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to comply with the order appointing him to represent R.F., which he agreed to do, and subsequently failed to perfect R.F.'s appeal for over 16 months.

"77.     The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to provide effective assistance of counsel to A.W. as determined by Judge Pokorny on March 16, 2021.

"78.     The respondent stipulated that he violated KRPC 8.4(d) in A.W.'s case.

"79.     The hearing panel concludes that there is clear and convincing evidence the respondent violated KRPC 8.4(d) in his representation of both R.F. and A.W.

10

"KRPC 8.4(g)

"80.     'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g).

"81.     The respondent engaged in conduct that adversely reflects on his fitness to practice law when he provided ineffective assistance of counsel to A.W. as determined by Judge Pokorny on March 16, 2021. The ineffective assistance finding was based on multiple errors by the respondent of a magnitude great enough that Judge Pokorny found that there was a 'substantial likelihood the outcome of this case would have been different' but for the respondent's ineffective assistance.

"82.     The respondent stipulated that he violated KRPC 8.4(g) in A.W.'s case.

"83.     As such, the hearing panel concludes that there is clear and convincing evidence the respondent violated KRPC 8.4(g).

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"84.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"85.     *Duty Violated*. The respondent violated his duty to his clients and his duty to the legal system.

"86.     *Mental State*. The respondent negligently violated his duty. The respondent's lack of diligence in R.F.'s and A.W.'s cases exhibit a pattern of neglect.

11

"87.     *Injury*. As a result of the respondent's misconduct, the respondent caused potential significant injury to R.F. While R.F.'s appeal of the denial of his K.S.A. 60-1507 motion was ultimately heard by the Court and denied, the potential injury of a 16-month delay to perfect the appeal of an incarcerated client is great. Further, as a result of the respondent's misconduct, the respondent caused actual injury to A.W., who was convicted of one count of rape without effective assistance of counsel.

"Aggravating and Mitigating Factors

"88.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"89.     *Prior Disciplinary Offenses*. The respondent has been previously disciplined on two occasions. On March 16, 2010, the respondent entered into a diversion agreement wherein he admitted that he violated KRPC 1.3 (diligence) and 1.4 (communication). On July 19, 2018, the respondent received an informal admonition for violations of KRPC 1.3 (diligence) and 1.4 (communication).

"90.     *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct in R.F.'s and A.W.'s cases. Particularly, the respondent's lack of diligence and prejudice to the administration of justice are a common theme in both cases.

"91.     *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 3.2 (expediting litigation), and KRPC 8.4(d) and (g) (professional misconduct). Further, the respondent committed misconduct in his representation of more than one client. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"92.     *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1988. At the time of the misconduct, the respondent had been practicing law for more than 30 years.

12

"93.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"94.     *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"95.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The respondent fully cooperated with the disciplinary process including cooperating with investigators and ultimately entering into stipulations as to facts and rules violations in both DA13,344 and DA13,693. Further, the testimony of James Campbell showed that over the past year the respondent has actively complied with his proposed probation plan and Mr. Campbell's directions.

"96.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the bar of Franklin County, Kansas, and accepts court appointed criminal defense cases in other surrounding counties. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel and by the testimony of district court judge Amy Harth and attorney James Campbell.

"97.     *Physical Disability*. The respondent testified that he has been diagnosed with and suffers from sleep apnea, which causes insomnia, for many years. The respondent has worked with his physician to resolve the sleep apnea issue but testified that he has had little success in addressing it via the use of a CPAP machine. However, the respondent testified that he has experienced good results from taking other steps as suggested by his physician. Under the respondent's proposed probation plan, the respondent is required to follow the advice of his physician for treatment of all medical reasons for his insomnia. Under the probation plan, the respondent is also required to

13

continue to work with KALAP and follow KALAP's advice to address his sleep problems.

"98.    *Mental Disability or Chemical Dependency Including Alcoholism or Drug Abuse*. The respondent testified that he battles depression, which the respondent testified may be exacerbated by exhaustion caused by sleep apnea. The respondent also testified that he suffers from occupational paralysis, which he described as a 'mental paralysis where I look at it and say I don't think I can do one more thing today . . . I have to put this off until the morning.' The respondent testified that he has been working regularly with KALAP, which he states has been 'a lot of help.' Under the respondent's proposed probation plan, the respondent is required to continue to work with KALAP and follow KALAP's advice to address any mental health issues.

"99.    *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"100.   In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

"4.42    'Suspension is generally appropriate when:
    '(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
    '(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

"4.43    'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.'

"6.22    'Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.'

14

"6.23    'Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.'

"*Discussion*

"101.    In reaching its recommendation of discipline, the hearing panel considered the fact that the conduct at issue in DA13,693 occurred in 2019, around the same time as the conduct at issue in DA13,344, even though the DA13,693 case was docketed after formal hearing in DA13,344 commenced.

"102.    The hearing panel also notes that the misconduct alleged in DA13,344 and DA13,693 is similar in nature, and appears to have stemmed from the same underlying circumstances in the respondent's health, unsustainable caseload, and practice management.

"103.    When a respondent requests probation, the hearing panel is required to consider Rule 227 (2022 Kan. S. Ct. R. at 283), which provides:

'(d)    Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

(1)    the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

(2)    the misconduct can be corrected by probation; and

(3)    placing the respondent on probation is in the best interests of the legal profession and the public.'

"104.    The respondent developed a workable, substantial, and detailed plan of probation. The plan provides that the respondent shall not violate the plan or the KRPC. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least 14 days prior to the

15

continued hearing on the formal complaint in DA13,344 and the hearing in DA13,693. The respondent put the proposed plan of probation into effect prior to the hearing by complying with each of the terms and conditions of the probation plan for over one year.

"105.    Further, the respondent's chosen probation supervisor, James Campbell, testified at length during the hearing about the measures put in place for the respondent's probation and the respondent's compliance with those measures over the past year. The hearing panel concludes that the probation plan contains adequate safeguards to address the respondent's misconduct, protect the public, and ensure the respondent's compliance with the KRPC, the Rules Relating to Discipline of Attorneys, and the respondent's oath of office.

"106.    The hearing panel concludes that the respondent has complied with Rule 227(a) and (c) and that the respondent's probation plan satisfies the requirements in Rule 227(b). The hearing panel further concludes that the respondent's misconduct can be corrected by probation.

"107.    Placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.

"108.    Of note, the respondent's far reduced case load appears to have allowed him to better represent his clients and avoid the issues that led to his misconduct in these two matters. The hearing panel recommends that a reduced caseload remain part of the respondent's practice as recommended by Mr. Campbell.

"109.    The hearing panel thanks Mr. Campbell for his service to the bar by serving as probation supervisor for the respondent and for helping the respondent implement practices that appear to have benefitted the respondent, his clients, and the legal system.

"*Recommendation of the Parties*

"110.    The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of six months. The disciplinary

16

administrator also recommended that the respondent be required to undergo a reinstatement hearing. The disciplinary administrator does not oppose staying this period of suspension while the respondent is on probation for three years according to the terms of the probation plan filed by the respondent.

"111.    The respondent recommended an unspecified underlying period of suspension to be stayed while the respondent is on probation for three years according to the terms of the probation plan filed by the respondent.

"*Recommendation of the Hearing Panel*

"112.    Based upon the stipulations, the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 90 days. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Rule 232 (2022 Kan. S. Ct. R. at 293.) The hearing panel further recommends that the imposition of the 90-day suspension be stayed while the respondent is on probation for three years according to the terms of the probation plan filed by the respondent in DA13,344 on January 15, 2021, and as Respondent's Exhibit 693-E in DA13,693.

"113.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, our standard of review is well-established.

"[T]he court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Hodge*, 307 Kan. 170, 209, 407 P.3d 613 (2017); Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281). Clear and convincing evidence is evidence that causes the

17

fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020)." *In re Huffman*, 315 Kan. 641, 674, 509 P.3d 1253 (2022).

The respondent was given adequate notice of each formal complaint to which he filed an answer. The respondent was also given adequate notice of the hearings before the panel and the hearing before this court. The respondent developed a detailed probation plan that was provided to the Disciplinary Administrator and each member of the hearing panel prior to the hearing on the formal complaints. Respondent also had the opportunity to take exception to the panel's findings of fact and conclusions of law.

The respondent chose to take no exceptions, and so the panel's findings of fact and conclusions of law are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2022 Kan. S. Ct. R. at 287). These admitted facts establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.3 (2022 Kan. S. Ct. R. at 331) (diligence), KRPC 1.4 (2022 Kan. S. Ct. R. at 332) (communication), KRPC 3.2 (2022 Kan. S. Ct. R. at 390) (expediting litigation), and KRPC 8.4 (2022 Kan. S. Ct. R. at 434) (professional misconduct) and support the panel's conclusions of law. We thus adopt both the panel's findings of fact and conclusions of law.

The only remaining issue is to decide the appropriate discipline for these violations. During oral arguments, the Disciplinary Administrator's office (ODA) proposed following the panel's recommendation of a 90-day suspension stayed during three years of probation according to the respondent's Amended Proposed Probation Plan, pursuant to which the respondent has been operating voluntarily. According to regular reports from respondent's plan supervisor, the respondent has been fully compliant with this plan, which has included following all suggestions made to respondent by the supervisor. The ODA further indicated it would not oppose starting the probation period on January 15, 2021—the date respondent began following the plan voluntarily. Finally,

the ODA recommended following the remainder of the panel's recommendations for discipline, including a hearing under Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293) before his license would be reinstated. Respondent echoed the ODA's recommendations, also requesting that the three-year probation period begin January 15, 2021, rather than the date we issue an opinion in this matter.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. *In re Long*, 315 Kan. 842, 853, 511 P.3d 952 (2022). The court is cognizant that "'[o]ur primary concern must remain protection of the public interest and maintenance of the confidence of the public and the integrity of the Bar.' [Citation omitted.]" *In re Jones*, 252 Kan. 236, 241, 843 P.2d 709 (1992).

After considering the evidence presented, the recommendations of the hearing panel, and the recommendations of the parties, we conclude appropriate discipline is as follows:

The respondent is suspended from the practice of law for 90 days. However, that suspension is stayed for a period of three years, during which the Respondent is placed on probation under the terms and conditions of his Amended Proposed Probation Plan and the additional condition that respondent's practice be limited to the number of cases advised by his probation supervisor. Respondent's period of probation shall begin on January 15, 2021, which is the date he began voluntarily complying with his proposed plan.

Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Forrest A. Lowry is suspended for 90 days from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(3) (2022 Kan. S. Ct. R. at 281) for violations of KRPC 1.3, 1.4, 3.2, 8.4(d), and 8.4(g). However, respondent's suspension is stayed during a three-year period of probation, beginning January 21, 2021. Respondent's probation shall have the terms and conditions set forth above, which are incorporated by reference.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2022 Kan. S. Ct. R. at 292).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

ROSEN and BILES, JJ., not participating.